ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC 06 2022

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHELITHA ROBERTSON | Criminal Indictment<br><br>No.  1:22CR-432 |

THE GRAND JURY CHARGES THAT:

**Background**

At times relevant to this Indictment:

1.      The defendant, SHELITHA ROBERTSON, was a resident of Fulton County in the State of Georgia. ROBERTSON was the owner and controller of certain corporate entities based in the Northern District of Georgia, including Atlanta Custom Motors, LLC; MO Griggs Contracting, Inc.; the Renee Group; and Tritan, Inc. (collectively, the "Robertson Entities").

2.      Chandra Norton was a resident of Cherokee County in the State of Georgia.

*The Paycheck Protection Program ("PPP")*

3.      The PPP was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted

participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

5. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

6.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

*Relevant Financial Institutions*

7.      "Bank A" was a financial institution based in Salt Lake City, Utah, that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A was an approved SBA lender of PPP loans.

8.      "Bank B" was a financial institution based in Raleigh, North Carolina, that was insured by the FDIC. Bank B was an approved SBA lender of PPP loans.

9.      "Bank C" was a financial institution based in Hilton Head, South Carolina, that was insured by the FDIC. Bank C was an approved SBA lender of PPP loans.

10.     "Bank D" was a financial institution based in Atlanta, Georgia, that was insured by the FDIC.

11. "Bank E" was a financial institution based in Charlotte, North Carolina, that was insured by the FDIC.

## COUNT ONE
*Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349*

12. Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13. From at least in or around April 2020 through at least in or around June 2020, in the Northern District of Georgia and elsewhere, the defendant,

**SHELITHA ROBERTSON,**

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with Chandra Norton and other individuals, known and unknown to the Grand Jury, to commit an offense against the United States, namely wire fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose

of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose

14. It was the purpose of the conspiracy for ROBERTSON and her coconspirators to unjustly enrich themselves by fraudulently obtaining PPP loans under false and misleading pretenses and to conceal their conduct.

## Manner and Means

15. Beginning in or around April 2020, ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted, or caused the submission of, fraudulent PPP loan applications containing materially false information concerning, among other things, the monthly payroll expenses and number of employees at each of the Robertson Entities, as follows:

| Business | Approx. Avg. Monthly Payroll Listed in Application | Approx. No. of Employees Listed in Application | Approx. Date Application Signed | Lender Bank |
|---|---|---|---|---|
| Atlanta Custom Motors | $790,511 | 118 | April 9, 2020 | Bank A |
| The Renee Group | $685,879 | 93 | April 17, 2020 | Bank B |
| MO Griggs | $649,867 | 133 | April 21, 2020 | Bank C |
| Tritan | $682,121 | 83 | May 14, 2020 | Bank A |

16. ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted, or caused the submission of, false and fraudulent documentation purporting to substantiate the monthly payroll expenses and number of employees at each of the Robertson Entities, including false and fraudulent financial documents and Internal Revenue Service ("IRS") forms in which payroll expenses were fabricated and inflated.

17. ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted, or caused the submission of, falsified IRS Form 941Xs for each quarter of 2019 with the PPP loan application for Atlanta Custom Motors.

18. ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted, or caused the submission of, falsified IRS Form 941s for the second, third, and fourth quarters of 2019 and the first quarter of 2020, with the PPP loan application for the Renee Group.

19. ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted or assisted in the submission of, falsified IRS Form 941s for each quarter of 2019 with the PPP loan application for MO Griggs.

20. ROBERTSON, together with Norton and others known and unknown to the Grand Jury, submitted or assisted in the submission of, falsified IRS Form 941s for each quarter of 2019 with the PPP loan application for Tritan.

21. The PPP Loan Applications also falsely claimed the number of employees on the payroll of each of the Robertson Entities:

   a. The PPP loan application for Atlanta Custom Motors claimed 118 employees when, in fact, there were none.

   b. The PPP loan application for the Renee Group claimed 93 employees when, in fact, there were only between eight and thirteen.

   c. The PPP loan application for MO Griggs claimed 133 employees when, in fact, there were none.

   d. The PPP loan application for Tritan claimed 83 employees when, in fact, there were none.

22. Each of the PPP Loan Applications contained ROBERTSON's initials to certify each of the following fraudulent representations:

   a. The Applicant business was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on IRS Form(s) 1099-MISC;

  b. The loan funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; and

  c. The information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

23.  ROBERTSON sent email communications to the lender banks, and caused the transmission of emails, inquiring about the status of the PPP loan applications in which additional false representations and misleading statements were made. ROBERTSON also spoke to bank employees on the telephone to provide additional information about her applications and to inquire about the status of funding.

24.  In total, financial institutions issued over $7 million in PPP loans to the Robertson Entities.

25.  Contrary to her representations, ROBERTSON obtained the PPP loan funds to use for her own enrichment, including for example, diverting the funds to purchase motor vehicles, including a Rolls-Royce and a motorcycle, jewelry, and other luxury items. ROBERTSON further transferred loan proceeds to family members and coconspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FOUR
*Wire Fraud – 18 U.S.C. § 1343 and § 2(a)*

26.  Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27.  From at least in or around April 2020 through at least in or around June 2020, in the Northern District of Georgia, and elsewhere, the defendant,

**SHELITHA ROBERTSON,**

did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose

28.  Paragraph 14 of this Indictment is realleged and incorporated by reference as a description of the purpose of the scheme and artifice to defraud.

9

### Scheme and Artifice to Defraud

29. Paragraphs 15 through 25 of this Indictment are realleged and incorporated by reference as a description of the scheme and artifice to defraud.

### Use of the Wires

30. On or about the dates specified as to each count below, ROBERTSON, in the Northern District of Georgia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce, as follows:

| COUNT | Approx. Date | Description of Interstate Wire |
|---|---|---|
| 2 | May 1, 2020 | Wire transfer of approximately $1,624,600 representing a PPP loan disbursement from an account at Bank C to a bank checking account at Bank D in the Northern District of Georgia. |
| 3 | May 8, 2020 | Wire transfer of approximately $1,976,277 representing a PPP loan disbursement from an account at Bank A to a bank checking account at Bank E in the Northern District of Georgia. |
| 4 | May 15, 2020 | Wire transfer of approximately $1,705,302 representing a PPP loan disbursement from an account at Bank A to a bank checking account at Bank D in the Northern District of Georgia. |

All in violation of Title 18, United States Code, Section 1343 and Section 2(a).

## COUNT FIVE

*Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity – 18 U.S.C. § 1957 and § 2*

31. Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

32. On or about the dates specified as to each count below, in the Northern District of Georgia and elsewhere, the defendant,

**SHELITHA ROBERTSON,**

knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in and willfully caused others to engage in the following monetary transactions, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| COUNT | Approx. Date | Description of Monetary Transaction |
|---|---|---|
| 5 | May 12, 2020 | Check no. 1076 for $128,000 from a bank checking account at Bank E in the name of Atlanta Custom Motors, LLC to "Guven," to purchase a 10-carat diamond ring. |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## Forfeiture Provision

33. Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, the defendant, SHELITHA ROBERTSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(2), any property, real or personal, that constitutes or is derived from proceeds traceable to such offenses, including but not limited to the following:

    a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in this Indictment.

34. Upon conviction of the offense alleged in Count Five of this Indictment, the defendant, SHELITHA ROBERTSON, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property real or personal, involved in such offense and all property traceable to such offense, including but not limited to the following:

    a. MONEY JUDGMENT: a sum of money in U.S. currency representing the value of the property involved in the offense for which the defendant is convicted.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property described above.

A _True_ BILL

_/s/_ FOREPERSON

RYAN K. BUCHANAN
   *United States Attorney*

*Bernita B. Malloy*
BERNITA MALLOY
   *Assistant United States Attorney*
   Georgia Bar No. 718905

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

GLENN S. LEON
  *Chief*
U.S. Department of Justice
Criminal Division, Fraud Section

ARIEL GLASNER
  *Trial Attorney*
U.S. Department of Justice
Criminal Division, Fraud Section
New York Bar No. 4848339